CHATEAU APARTMENTS CO., a partnership, the New Colony North Co., a partnership, Foster Park Associates, a partnership, Jefferson Associates, a partnership, and Monroe Park, a partnership, individually and on behalf of all persons similarly situated, Plaintiffs below, Appellants,

v.

The CITY OF WILMINGTON, a municipal corporation of the State of Delaware, Defendant below, Appellee.

Supreme Court of Delaware.

Submitted May 16, 1978.

Decided Aug. 14, 1978.

Bruce M. Stargatt and Richard A. Levine of Young, Conaway, Stargatt & Taylor, Wilmington, for plaintiffs below, appellants.

Jeffrey S. Goddess, City Sol., and John R. Sheridan, Asst. City Sol., Wilmington, for defendant below, appellee.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

HERRMANN, Chief Justice.

In this action for an injunction, the plaintiffs appeal from the Court of Chancery's dismissal of the complaint on the ground that Chancery lacked jurisdiction because the plaintiffs have an adequate remedy at law.

I.

The plaintiffs are owners of large apartment complexes in Wilmington and suburban New Castle County that receive water service from the Water Department operated by the City of Wilmington. Since 1970, the City has adopted a series of water rates

under which those served through the larger sizes of water meters, and who presumably use more water than those with smaller meters, pay more per unit of water than small users of water. The most recent rate structure adopted requires users with the largest meters to pay over thirteen times what the smaller user is obliged to pay.* Alleging that the rate structure is unfair and discriminatory as applied to them, the plaintiffs brought an action for an accounting for all sums improperly collected and to enjoin the City from continuing to charge unfair and discriminatory rates. The City's motion to dismiss the complaint was granted by the Chancery Court on the ground that it had an adequate remedy at law. The plaintiffs appeal; we affirm.

### II.

 Jurisdiction over the subject matter of a complaint is to be determined by an examination of the allegations in the complaint viewed in the light of what the plaintiff actually seeks and not necessarily what is pleaded. *Hughes Tool Company v. Fawcett Publications, Inc.*, Del.Supr., 315 A.2d 577, 579 (1974). In order for the Court of Chancery to assume jurisdiction over a proceeding, of course, there must be an absence of an adequate remedy at law. 10 *Del.C.* § 342. A legal remedy may not be adequate, however, although an action for damages could be brought, where the harm suffered will be irreparable or where the injury will occasion a multiplicity of suits. 42 Am.Jur.2d *Injunctions* § 39.

 In the instant case, the plaintiffs contend that the Court of Chancery erred in dismissing their complaint for lack of jurisdiction because there is no adequate remedy at law and irreparable harm, in the form of multiplicity of suits, will befall them if an injunction is not granted.

The allegation that there is no adequate remedy at law is premised upon a comparison between the remedy provided by statute against non-municipal utilities and the remedy actually available to plaintiffs. It

appears that under 26 *Del.C.* ch. 1, the rates of non-municipal utilities in the State are subject to the superintendence of the Public Service Commission and that, *inter alia*: rates may not be changed without notice to the Commission and the public, 26 *Del.C.* § 304, and the right to a hearing, § 305; a bond may be required by the Commission, § 306; the burden of proof is on the utility where a change in rates is sought, § 307; temporary or present rate rollbacks may be ordered, §§ 309–311; and a utility wrongfully refusing to give a refund must pay the reasonable attorneys' fees on suit "in any Court . . . of competent jurisdiction . . . ." by an aggrieved consumer, § 312. Orders of the Commission are appealable to the Superior Court, § 510; and that in the appropriate case, that Court has the right to enjoin ("stay") the rate change, § 511.

According to the plaintiffs, because these statutory remedies at law are not available to them, their remedy at law is inadequate. We find this contention unmeritorious. That the plaintiffs' remedy at law is arguably not as attractive as it would be if the water supplier were a privately owned utility is not sufficient to fulfill the threshold requirement for equity jurisdiction that the remedy at law be inadequate. The issue for the Equity Court is not whether another remedy would be preferable to the plaintiffs, but whether the available remedy at law will provide a full, adequate, and complete remedy to the plaintiffs.

In the instant case, there is no showing that an action at law could not determine the legality of the rate structure and award damages, if any, to compensate for any past unlawful payments made. Thus, we must conclude that the plaintiffs' contention that they lack an adequate remedy at law because certain statutory remedies are not available to them cannot, in and of itself, support the jurisdiction of the Court of Chancery.

The plaintiffs further contend that their remedy at law is inadequate because of the

---

* Users supplied with a ⅝″ meter pay a basic rate of $.56 per 1000 gallons while users supplied with an 8″ meter pay a basic rate of $7.37 per 1000 gallons.

irreparable harm which comes from the possibility of multiplicity of suits. They contend that even if they were to receive monetary damages in Superior Court for past discriminatory water rates, there is no assurance that the City will not continue to impose such rates in the future. They argue that even though the City alleges that it would not retain the present rate structure should the Superior Court determine it is illegal, the City's hypothetical future action should not defeat plaintiffs' claim for injunctive relief because a remedy at law cannot be adequate and complete if its adequacy and completeness depend on the will of the opposing party, citing 30 C.J.S. *Equity* § 25, p. 827.

We do not find the plaintiffs' allegations of the possibility of multiplicity of suits sufficient to vest jurisdiction over the proceeding in the Court of Chancery. There has been no threat of such action. For equity to assume jurisdiction where a multiplicity of suits is the alleged irreparable harm, the plaintiff must show more than a mere possibility of such litigation; the danger to which the plaintiff is exposed must be a real one. *Pomeroy's Equity Jurisprudence* (5th Ed.) § 251¾. While, to be sure, it is possible that the City could ignore a determination that their rates were unlawful and continue to charge unlawful water rates, we do not find the danger realistic. We decline to assume that, if liability is judicially established against the City, it will charge unlawful rates against the plaintiffs or other customers in deliberate disregard of such determination. See *Wilmington Trust Co. v. Schneider*, Del. Supr., 320 A.2d 709 (1974) and *Wise v. Delaware Steeple Chase and Race Ass'n*, Del. Supr., 45 A.2d 547 (1945). Should the City continue to charge excessive rates after such determination, however, proving the danger of multiplicity of suits to be real, the plaintiffs will, we are certain, be able to locate the Court of Chancery again.

The plaintiffs otherwise do not claim that irreparable harm will befall them if an injunction is not granted. It should be noted that although the plaintiffs have withheld water service payments, there is no threat of termination of water service as the City has agreed to await the outcome of this suit before taking action. Indeed, in this regard, counsel for plaintiffs admitted at oral argument that an injunction would not be necessary to retain water service in view of the agreement with the City.

It is further contended by the plaintiffs that the Court of Chancery has jurisdiction based upon the unreported decision of *University of Delaware v. City of Newark*, Del.Chanc. (11/25/75). In that proceeding the University filed a complaint seeking declaratory and injunctive relief on each of two counts: the first count alleged that the electric rates charged by Newark were unlawful, being excessive and discriminatory; and the second count alleged that Newark had no authority to prevent the University from purchasing electricity elsewhere. The Court granted summary judgment for Newark on the second count on the ground that no state law exempted it from Newark's right to sell electricity within the city limits. As to the first count, the Court determined it had jurisdiction to judicially review the legality of the electric rates set by the City, although rate-making is normally a legislative function, because a constitutional infringement was alleged, but denied summary judgment as there was insufficient material, factual and legal, on which to base a judgment. The Court of Chancery found this decision not controlling in the instant action because there is no protected property right.

According to the plaintiffs, inasmuch as the Court of Chancery took jurisdiction in *Newark*, it should take jurisdiction here because the relief sought is similar in each: relief from unlawful utility rates.

It appears that the jurisdictional issue addressed in *Newark* was whether judicial review of municipal rate setting, either legal or equitable, was permitted and that, as the plaintiffs concede, the specific question of whether there was equity jurisdiction was not addressed by the Court. For this reason, we think it inappropriate to look to the *Newark* case as a proper precedent for

finding jurisdiction of the instant issues in the Court of Chancery.

Affirmed.