Joseph E. BRANNON, Plaintiff-Respondent-Appellee,

v.

WARN BROS., INC., a California corporation, Individually and doing business as Crescent Truck Lines, et al., Defendants-Petitioners-Appellants.

No. 73–1367.

United States Court of Appeals, Ninth Circuit.

Nov. 29, 1974.

---

Richard H. Harding (argued), Littler, Mendelson & Fastiff, San Francisco, Cal., for defendants-petitioners-appellants.

Eugene B. Shapiro (argued), Shapiro & Maguire Law Corp., Beverly Hills, Cal., for plaintiff-respondent-appellee.

Before ELY and WALLACE, Circuit Judges, and THOMPSON,* District Judge.

## OPINION

WALLACE, Circuit Judge:

After two separate grievance proceedings, Brannon brought this action in state court against his employer, Warn Bros., Inc., dba Crescent Truck Lines, and George Warn and Frank J. Warn (collectively referred to as Crescent). After the case was removed to the federal district court, Crescent moved to dismiss or, in the alternative, to stay the action pending the outcome of further grievance proceedings. Crescent appeals from the denial of these motions. We dismiss Crescent's appeal from the order denying its motion to dismiss. We reverse and remand the order denying its motion to stay.

Crescent was a party to certain collective bargaining agreements with Line Drivers Union Local No. 468, an affiliate of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. Brannon was a

* Honorable Gordon Thompson, Jr., United States District Judge, Southern District of California, sitting by designation.

member of Local 468 and was employed by Crescent from February 19, 1968, to March 21, 1971. Three of Brannon's seven causes of action allege breaches of the collective bargaining agreements between Crescent and Local No. 468. His four remaining claims arise independently of the collective bargaining agreements but concern matters connected with his employment: failure to perform an agreement with Brannon for the replacement of a truck used in the course of Crescent's business; failure to pay workmen's compensation benefits; and two counts of failure to pay money due on open account.

Before commencing this action, two grievances were filed by or on behalf of Brannon asserting claims related to those contained in his complaint.[1] The first grievance resulted in a hearing on October 20, 1970, before the California Bay Area Labor-Management Committee (the Joint State Committee), a grievance committee composed of union and trucking association representatives. Because Crescent failed to appear at this hearing, the committee deprived Crescent of the benefit of the grievance provisions of the collective bargaining agreement then in effect. The second grievance also culminated in a hearing before the Joint State Committee on April 20, 1971. The committee dismissed this grievance as untimely filed.

### I. Jurisdiction Over the Appeal from the Denial of the Motion to Dismiss

■ Crescent's motion to dismiss was founded upon the outcome of the grievance hearing of April 20, 1971. Crescent claims that the dismissal of Brannon's grievance at that hearing precludes any recovery in the present action. The district court rejected this argument and denied Crescent's motion to dismiss. An order denying a motion to dismiss is not appealable. Catlin v. United States, 324 U.S. 229, 236, 65 S.Ct. 631, 89 L.Ed. 911 (1945); Spruill v. Cage, 262 F.2d 355, 356

(6th Cir. 1958); C. Wright, Law of Federal Courts § 101, at 453 (2d ed. 1970). We therefore dismiss Crescent's appeal from this order.

### II. Jurisdiction Over the Appeal from the Denial of the Motion to Stay

■ Crescent also appeals from the denial of its motion to stay the present action pending further grievance proceedings. An appeal lies from an interlocutory order granting or denying a stay if

(a) the action in which the motion for a stay was made could have been maintained as an action at law before the merger of law and equity, and (b) the stay was sought to permit prior determination of an equitable defense or counterclaim.

Danford v. Schwabacher, 488 F.2d 454, 455 (9th Cir. 1973). See 28 U.S.C. § 1292(a)(1). Brannon's appeal easily satisfies part (b) of this test. "Reliance upon an arbitration agreement to avoid immediate litigation is deemed an equitable defense . . .." Danford v. Schwabacher, supra, 488 F.2d at 456 (dictum). Part (a) presents more difficulties.

Brannon's claim for damages for breach of contract (first cause of action) is clearly an action at law. Ross v. Twentieth Century-Fox Film Corp., 236 F.2d 632, 633 (9th Cir. 1956). His claims for damages for fraudulent and malicious breach of contract (third and fourth causes of action) may sound in contract or tort, W. Prosser, Law of Torts 616, 619–20, 685–86 (4th ed. 1971), but in any case they are actions at law. Brannon's claim for an accounting for damages resulting from Crescent's breach of the collective bargaining agreements (second cause of action) is equitable. Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955). The pre-merger status of his remaining claims is uncertain. Brannon's cause of action for workmen's

---

1. The parties dispute whether the second grievance was authorized by Brannon.

compensation benefits (fifth cause of action) is neither legal nor equitable but statutory. *Danford, supra,* 488 F.2d at 456–457. His common counts for money due on open account (sixth and seventh causes of action) may be either legal or equitable. 9 J. Moore & B. Ward, Federal Practice ¶ 110.20 [3], at 242–43 (1973); 5 *id.* ¶ 38.25 (1974). Judging from Brannon's theories of recovery alone, the legal or equitable character of his complaint is difficult to determine. However, the only equitable relief he seeks is the accounting in his third cause of action. He otherwise seeks damages. We, therefore, conclude that Brannon's action is "basically and predominantly an action at law" satisfying part (a) of the preceding test. Alexander v. Pacific Maritime Ass'n, 332 F.2d 266, 267 (9th Cir.), cert. denied, 379 U.S. 882, 85 S.Ct. 150, 13 L.Ed.2d 88 (1964) (dictum).

### III. *Merits of the Motion to Stay*

The basic question raised by Crescent's motion to stay is the validity of the hearing of October 20, 1970. A derivative question, but one also before us on this appeal, is whether that question should be decided by the district court or whether it should first be decided through the contractual grievance procedures.

When no representative of Crescent appeared at the hearing of October 20, 1970, the Joint State Committee deprived Crescent of the benefit of the following provision of the collective bargaining agreement:

> The Union and the Employers agree that there shall be no strike, lockout, tie-up or legal proceedings without first using all possible means of settlement as provided for in this Agreement and in the National Agreement if applicable of any controversy which might arise.

Western States Over-the-Road Motor Freight Supplemental Agreement of April 1, 1970, to June 30, 1973 (the Western States Agreement), art. 45, § 1. The agreement specifically authorized the Joint State Committee to take this action:

> [R]efusal of either party to submit to or appear at the grievance procedure at any stage . . . withdraws the benefits of Article 45 [quoted in part above].

Western States Agreement art. 45, § 1(f).

Crescent claims that it did not receive prior notice of the October 20 hearing, that consequently the hearing is void and that Brannon is relegated to the contractual remedies specified in article 45 of the Western States Agreement. Crescent therefore seeks to stay the present action pending further grievance proceedings. We agree that a stay should issue but not for the reasons suggested by Crescent.

Federal labor policy requires the use of the contractual grievance procedures to the fullest extent possible:

> An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960) (footnote omitted). The grievance provisions of the Western States Agreement apply to "any controversy which might arise." Western States Agreement art. 45, § 1. While we leave the precise scope of this phrase to the district court,[2] we must interpret it at least to include disputes over the interpretation and application of the collective bargaining agreement. *See Warrior & Gulf, supra,* 363 U.S. at 582–583, 80 S.Ct. 1347.

Whether the October 20 hearing was efficacious cannot be resolved without determining whether the validity of that hearing is still open to dispute and, if so, whether Crescent was

---

**2.** See part IV *infra.*

given sufficient notice to permit the hearing to proceed. Each of these questions requires interpretation of the collective bargaining agreement. The first requires interpretation of the provisions governing finality of grievance hearings.[3] The second cannot be decided without setting standards for adequate notice of hearings conducted pursuant to the agreement. By referring these questions to the contractual grievance procedures, we follow the requirements of the collective bargaining agreement. We also fulfill our obligation to permit questions of contract interpretation to be decided by those best acquainted with the industrial practices that supplement the agreement. *Warrior & Gulf, supra,* 363 U.S. at 580–581, 80 S.Ct. 1347; *see* John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 554–555, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

Additional considerations support referral of these questions to the contractual grievance procedures. Collateral attack upon prior grievance hearings is much more easily and quickly accomplished through grievance proceedings rather than litigation. Moreover, review through a second grievance proceeding does not suffer from the limited scope accorded judicial review of grievance awards. *See* United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597–598, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Finally, a court can more easily review the validity of a prior grievance proceeding once a grievance committee or arbitrator has fully considered the issue.

▮ We recognize that an employee may bring suit on his grievance if his employer has repudiated the contractual grievance procedures and that the issue of repudiation would normally be for the court in such a case. *See* Vaca v. Sipes, 386 U.S. 171, 185, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) (dictum); Smith v. Pittsburgh Gage and Supply Co., 464

F.2d 870, 875–876 (3d Cir. 1972); Boone v. Armstrong Cork Co., 384 F.2d 285, 289–290 (5th Cir. 1967). However, we think that this case presents an extraordinary need for the expertise provided by the grievance process. The question whether Crescent repudiated the contractual grievance procedures depends, at least in part, on whether it received adequate notice of the October 20 hearing. But the standards for adequate notice have yet to be determined by the Joint State Committee. The agreement provides that "[t]he Joint State Committee shall at its first meeting formulate rules of procedure to govern the conduct of its proceedings." Western States Agreement art. 44, § 1. The arguments of the parties refer us to no rules formulated by the Joint State Committee, and we infer that none have been formulated. Nor does the agreement itself contain any provisions governing adequacy of notice. Furthermore, on the record now before us, we cannot determine whether a de novo resolution of the repudiation issue by the district court would conflict with the October 20 decision of the Joint State Committee. In light of these deficiencies in the record, the question of repudiation would be better resolved after the Joint State Committee has formulated standards for adequate notice.

▮ It might also be argued that the decision of the Joint State Committee following the October 20 hearing contains an implicit finding that Crescent received adequate notice. The transcript of that hearing, however, does not reveal that the committee even considered this issue. This fact distinguishes the present case from Cloak, Shirt & Dressmakers v. Senco, Inc., 69 L.R.R.M. 2142, 2144–2146 (D.Mass. August 28, 1968), in which the district court deferred to an arbitrator's conclusion that an absent party had been afforded adequate notice. Absent a determination either that Cres-

---

**3.** Where a Joint State Committee by a majority vote settles a dispute, no appeal may be taken to the Joint Western Area Committee.

Such a decision will be final and binding on both parties.

Western States Agreement art. 45, § 1(a).

cent received adequate notice or that the October 20 hearing finally resolves this question, we cannot hold that Crescent may challenge the validity of the October 20 hearing only through litigation.

█ Likewise, we cannot accept the argument that the October 20 decision of the Joint State Committee itself prevents any further grievance proceedings. We need not assume the validity of the October 20 hearing when that is the precise point in issue. Our decision today does not overrule the decision of the Joint State Committee and substitute our own view of the merits. *See Enterprise Wheel, supra,* 363 U.S. at 598–599, 80 S.Ct. 1358. We order a stay only to permit further grievance proceedings on the limited question of the validity of the October 20 hearing. If it is found invalid, then further grievance proceedings would of course be proper. Should that be the case, the October 20 hearing would indeed be overruled but not by judicial decision.

█ Finally, we require a stay despite the possible untimeliness of a grievance contesting the validity of the October 20 hearing. To obtain a hearing as of right, a grievance must be filed within the 45-day limitation specified in the agreement:

> All grievances, claims and disputes shall be submitted to the Joint State Committee within forty-five (45) days of the occurrence of the matter upon which the grievance, claim or dispute is based. Any such grievance, claim or dispute not submitted within such time shall be waived unless the Joint State Committee by majority vote for good cause accepts such submission, or unless either party has intentionally concealed the facts upon which the grievance, claim or dispute is based.

Western States Agreement art. 45, § 1(h). The present action was filed 17 months after the October 20 hearing. Since the validity of the October 20 hearing has never been submitted to the Joint State Committee, a grievance raising this issue may well be untimely. But even assuming that the committee would find such a grievance untimely, it may still accept submission of the grievance for good cause shown. Given the difficult issues of contractual interpretation raised by this case, we think that the Joint State Committee should be given the opportunity to consider the validity of the October 20 hearing.[4]

### IV. *Scope of the Stay Order*

Crescent moved to stay all proceedings in this case. Only three of Brannon's seven causes of action, however, allege breaches of the collective bargaining agreements between Crescent and Local 468. Although we hold that a stay must issue as to these three causes of action, the four remaining causes of action must be stayed only if they fall within the scope of the contractual grievance procedures; otherwise, they are unaffected by the validity of the October 20 hearing. The parties have not adequately briefed this question on this appeal. Furthermore, upon remand, the district court may decide to stay the entire action in the exercise of its discretion over efficient administration of its docket. We, therefore, leave the scope of the stay order to be determined by the district court.

Dismissed in part; reversed and remanded in part.

---

4. If the Joint State Committee refuses to accept submission of the grievance, the district court will be forced to review the validity of the October 20 hearing according to the standards established by the Supreme Court, United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597–599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *see* Humphrey v. Moore, 375 U.S. 335, 345–351, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964), or to decide the issue of repudiation, *see* Vaca v. Sipes, 386 U.S. 171, 185, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) (dictum). We intimate no view as to disposition of these as yet hypothetical issues.